THE HONORABLE ROBERT S. LASNIK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| SELMA T. EASSA., Personal Representative of the Estate of LOUIS J. EASSA, a Florida individual; and SELMA T. EASSA, a Florida individual,<br><br>       Plaintiff,<br><br>  v.<br><br>HOLLAND AMERICA LINE., N.V., a Washington corporation; HAL Antillen N.V., a Curacao corporation; David Murray, M.D., MS Zuiderdam's onboard physician; and SUSAN PEREIRA, one of MS Zuiderdam's onboard nurses,<br><br>       Defendants. | No. 14-01639<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>**Friday, January 22, 2016** |

## I.  RELIEF REQUESTED

COME NOW Defendants HOLLAND AMERICA LINE. N.V., HAL ANTILLEN N.V., Dr. DAVID MURRAY, M.D., and SUSAN PEREIRA, (collectively "Defendants") and move this Court, pursuant to Fed. R. Civ. P. 56, to dismiss this matter in its entirety. Plaintiff

NIELSEN ❉ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

SELMA EASSSA's clam for the alleged wrongful death of her husband, LOUIS EASSA, is exclusively governed by the Death on the High Seas Act ("DOHSA"), and under DOHSA, she cannot prove the Defendants are liable for any pecuniary loss due to her husband suffering a heart attack aboard ship.  If the wrongful death claim is not dismissed by summary judgment, Defendants alternatively seek by partial summary judgment to limit damages under DOHSA to pecuniary loss to be determined by a bench trial in admiralty, striking the jury demand. Additionally, partial summary judgment is proper as to dismiss Plaintiff Selma Easssa's individual claim for emotional distress as a matter of law and given the provisions of an enforceable cruise contract excluding such a claim where there is no evidence she was at actual risk of physical injury caused by the negligence of a crewmember.

## II. **BACKGROUND**

Louis J. Eassa died of a heart attack while at sea aboard the M/S ZUIDERDAM on November 10, 2015.  Complaint, Dkt. #1, ¶21; Answer, Dkt. #11, ¶21; Dr. Thompson Decl. ¶¶ 2-3. Jurisdiction is properly asserted under the DOHSA. Compl. & Answer ¶10.

Plaintiff's Fourth Cause of Action for Wrongful Death under DOHSA alleges Mr. Eassa had a heart attack due to failing to warn him of a norovirus issue aboard the vessel in 2008 and failing to take proper care to minimize the risk of norovirus. Compl. ¶¶ 56-58.

Plaintiff's Fifth Cause of Action for Negligent Infliction of Emotional Distress ("NEID") asserts that Mrs. Eassa was placed in immediate risk of harm of being exposed to norovirus from her husband, and a result of alleged negligence, she suffered from emotional distress, even though she did not sustain actual risk of any physical injury caused by crew negligence, and in fact did not develop any gastrointestinal illness during her entire November 2013 cruise. Compl., ¶¶ 71-73; Eassa Depo., Exh. 1 to Wright Decl., 35:20-22.

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

### III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

HOLLAND AMERICA LINE., N.V., acting as an agent of the owner of the ship, and HAL Antillen N.V., the ship owner, ("HAL") are part of the Holland America Group and are corporations that operate and charter ships serving destinations around the world. Compl. & Answer ¶¶ 3-4; Bergman Decl. ¶1.   Defendant David Murray, M.D. is an onboard physician on the HAL cruise ship MS ZUIDERDAM, and Defendant Susan Pereira is an onboard nurse. Compl. & Answer ¶¶ 5-6.   Defendants denied that they were agents, employees and/or representatives of each other. *Id.* ¶ 7.

In May of 2013, Louis and Selma Eassa, husband and wife, ("the Eassas") purchased tickets for a 10-day cruise from Defendant HAL. *Id.* ¶ 15.   The cruise ship, the MS ZUIDERDAM, was scheduled to depart from Fort Lauderdale, Florida on November 8, 2013, and return to Fort Lauderdale, Florida on November 18, 2013.  *Id.*  The ship was to travel throughout the Caribbean and scheduled to stop at a number of port cities for cruise related excursions. *Id.*  By the second day of the voyage (beginning November 9, 2013), the vessel was well outside of 3 nautical miles of Florida. Bergman Decl. ¶ 2.

The Eassas completed the online check-in and accepted the terms and conditions of the cruise contract ("Passage Contract") with HAL on September 26, 2013. Bergman Decl. ¶¶ 4, 15-16.  Like all guests, they were required to produce the Express Documents in order to board the ship. *Id.* ¶¶ 4, 9.  The Express Documents that the Eassas printed out contained their boarding passes and the terms and conditions of the Passage Contract. *Id.* ¶ 5.  The Passage Contract is also available on HAL's website. *Id.* ¶ 17. The terms and conditions of the Passage Contract clearly state at the top of the first page in all capital letters in bold face type:

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 3

NIELSEN ✶ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**ISSUED SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES.   READ TERMS AND CONDITIONS CAREFULLY BEFORE ACCEPTING.**

*Id.* ¶ 6; Ex. 2 to Bergman Decl. Then the Passage Contract terms and conditions states in all capital letters, "**IMPORTANT NOTICE TO PASSENGERS**," drawing attention to the fact that the document is a legally binding contract and that the parties agree that certain clauses contain important limitations on any potential claim against HAL and third parties.  *Id.* ¶ 7; Ex. 2 to Bergman Decl.   One of those was paragraph A4, which specifically provides "**Limitation on Liability**" and "**Non-Provider Services**," as follows:

> (a) In the event you are injured, become ill, or die, or your property is lost or damaged, or you and/or your property is delayed, or you sustain any other loss or damage whatsoever, we will not be liable to you unless the occurrence was due to our negligence or willful fault.  We disclaim liability to you under any circumstances for infliction of emotional distress, mental suffering or psychological injury which was not: (i) the result of the physical injury to you caused by the negligence or fault of a crewmember or the manager, agent, master, owner or operator of the Ship; (ii) the result of you having been at actual risk of physical injury caused by the negligence or fault of a crewmember or the manager, agent master, owner or operator of the Ship; or (iii) intentionally inflicted by a crewmember or the manager, agent, master, owner or operator of the Ship.  In no event will we be liable to you for consequential, incidental, exemplary or punitive damages.
> . . .
>
> (d) We do not undertake to supervise, nor assume any liability in respect of, the acts or omissions of the Ship's physician, Ship's nurse, … all of whom are either independent contractors or are employed by independent contractors, and work directly for the passenger when performing their services.  . . . Similarly, any medical examination or treatment you receive from medical personnel aboard the Ship during the Cruise, Cruisetour or Land Trip, is provided solely for your convenience by independent contractors rather than our agents or employees.  We do not undertake to supervise the medical expertise of any such personnel and will not be liable for the consequences of any examination, advice, diagnosis, medication, treatment, prognosis, or other professional services which a doctor or nurse may furnish or fail to furnish to you.  Furthermore, you may be charged for such professional services.

*Id.* ¶ 8; Ex. 2 to Bergman Decl.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 4

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

In addition to paragraph 4(a) excluding liability for emotional distress unless it was the result of actual risk of physical injury caused by the negligence by a crewmember and paragraph 4(d) disclosing that HAL does not supervise medical care given by independent contractors on ship, paragraph 10 of the HAL Passage Contract also confirms that "There are risks inherent to being aboard the Ship," including, "lack of access to full medical services." *Id.* ¶ 9.

The Eassas accepted the terms and conditions of the Passage Contract before completing the online check-in process and printing the cruise Express Documents required to board the ship. *Id.* ¶¶10-14, Exh. 3 to Bergman Decl.  In completing the on-line check in process, they manually checked the box that acknowledged they, "RECEIVED, READ, AND AGREE TO THE TERMS AND CONDITIONS STATED IN THE CRUISE CONTRACT ABOVE." *Id.*

Days before their cruise, the Centers for Disease Control and Prevention ("CDC") scored the ZUIDERDAM a "99 out of 100" during a health inspection. Wright Decl. ¶ 6. & Ex. 4 thereto. Even so, HAL disclosed to passengers information about shipboard illness, including videos from the CDC to reduce chances of illness, and brochures recommending passengers wash their hands and use hand sanitizer. *Id.* ¶¶ 3-4; Ex. 2 thereto.

On Friday, November 8, 2013, the Eassas departed from Fort Lauderdale, Florida aboard the ZUIDERDAM.  Compl. & Answer ¶ 16.  According to the vessel's log, the vessel traveled 268.6 miles at sea after leaving port arriving at anchor at Half Moon Cay in the Bahamas.  See Ex. B to Capt. Turner Decl.  On Saturday, November 9, 2013, the vessel commenced a sea voyage from Half Moon Cay, Bahamas at 14:24 hours.  Capt. Turner Decl. ¶ 5.

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

On November 9, 2013, in the early evening, the Eassas relaxed in their room after their dinner meal. Compl. & Answer ¶17. Louis Eassa started to feel ill and his stomach began to cramp violently, after which he vomited repeatedly for hours. *Id.*

The ship's nurse, Defendant Pereira reported to the Eassas' cabin and administered an injection of the anti-nausea drug Phenergan. *Id.* ¶ 18. Nurse Pereira confirmed to Selma Eassa that Louis Eassa was a victim of norovirus. *Id.* ¶ 19. Housekeeping personnel entered the Eassas' stateroom over the next couple of hours to change the linens and clean the norovirus germs, if any, off the room's fixtures and furnishings. *Id.*

In response to Mrs. Eassa's subsequent call for help after her husband stopped breathing, the ship's staff, including Defendant Murray, unsuccessfully attempted to revive Mr. Eassa first administering CPR and then an automated external defibrillator (AED). *Id.* ¶ 21. Mr. Eassa was pronounced dead as a result of a heart attack at 4:34 a.m. on November 10, 2013. *Id.* ¶ 21. *See also* Dr. Thompson Decl. ¶¶ 2-3.

Plaintiff Selma Eassa did not contract the alleged norovirus or any other illness during her cruise. Eassa Dep. 35:20-36:1, Oct. 15, 2015, attached as Ex. 1 to Asia N. Wright Decl. She alleges that even though Nurse Pereira confirmed to her that Mr. Eassa was a victim of norovirus, Mrs. Eassa gently bathed her husband and sat next to him after their stateroom lines were changed and cabin cleaned. Compl., ¶¶ 19-20. In addition, there was no outbreak of norovirus aboard the ship during the cruise. Wright Decl. ¶ 5 & Ex. 3 thereto.

## IV. **EVIDENCE RELIED UPON**

1. Complaint, Dkt. #1, & Answer, Dkt. # 21;

2. Deposition Testimony of Plaintiff Selma T. Eassa (Exh. 1 to Wright Decl.);

3. Declaration of Dr. Robert G. Thompson & Exhibits1-2;

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

4. Declaration of Captain Christopher Turner & Exhibits A-C;

5. Declaration of Tiffany Bergman & Exhibits 1-6; and

6. Declaration of Asia N. Wright & Exhibits 1-4.

## V.  ISSUES PRESENTED

1. Can Plaintiff prove a claim for Wrongful Death under DOHSA based on her husband suffering a heart attack due to failing to warn him of a norovirus issue aboard the vessel in 2008 or failing to take proper care to minimize the risk of norovirus?

2. Are Defendants entitled to a bench trial on Plaintiff's DOHSA claim for nonpecuniary damages based on admiralty jurisdiction?

3. Should Plaintiff's claim for negligent infliction of emotional distress be dismissed when there was no actual risk of physical injury caused by crew negligence?

## VI. ARGUMENT

### A. Standard for Summary Judgment.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and identifying those portions of the materials in the record that show the absence of a genuine issue of fact, Fed. R. Civ. P. 56(c)(1).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 7

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    from which a reasonable jury could return a verdict in its favor." *T.W. Elec. Serv., Inc. v. Pac.*

2    *Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Likewise, the Court may grant

3    partial summary judgment or other appropriate relief. *See also* Fed. R. Civ. P. 56(f) & (g).

     **B.  The Death on the High Seas Act, 46 U.S. Code § 30302 *et seq.*, provides
         Plaintiff's Exclusive Remedy Under General Maritime Law for the Alleged
         Wrongful Death of Her Husband Who Died Aboard HAL's Vessel At Sea.**

6          As a preliminary matter, general maritime law controls all causes of action in the

7    present action, as the alleged claims arise from actions that occurred upon navigable waters

8    and bear a significant relationship to traditional maritime activity.  *See Executive Jet Aviation,*

9    *Inc. v. City of Cleveland*, 409 U.S. 249 (1972); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668

10   (1982); *Sisson v. Ruby*, 497 U.S. 358 (1990).  It is well settled that the law governing

11   passengers' suits against cruise lines is the general maritime law of the United States. *See*

12   *generally* Thomas J. Schoenbaum, 1 ADMIRALTY AND MARITIME LAW § 3–5 (2d ed.

13   1994*)*; *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959).  General

14   maritime law consists of federal common law that furnishes the rule of decision in admiralty

15   and maritime cases in the absence of preemptive legislation.  Shoenbaum, § 5–1. *See also*

16   *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 215 (1917) ("Considering our former opinions,

17   it must now be accepted as settled doctrine that in consequence of these [Constitutional]

18   provisions Congress has paramount power to fix and determine the maritime law which shall

19   prevail throughout the country."); *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476

20   U.S. 858, 864 (1986) ("*Absent a relevant statute,* the general maritime law, as developed by

21   the judiciary, applies.") (emphasis added). "DOHSA is such a statute." *Helman v. Alcoa*

22   *Global Fasteners, Inc.*, 843 F. Supp. 2d 1038, 1041 (C.D. Cal. 2011).

23         In 1920, Congress enacted the Death on the High Seas Act ("DOHSA") as the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 8

**NIELSEN ✤ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    exclusive remedy "whenever the death of a person shall be caused by wrongful act, neglect, or

2    default occurring on the high seas beyond a marine league from the shore of any state." Death

3    on the High Seas Act of 1920, 41 Stat. 537.  Now, DOHSA provides:

4                    When the death of an individual is caused by wrongful act,
                    neglect, or default occurring on the high seas beyond 3 nautical
5                    miles from the shore of the United States, the personal
                    representative of the decedent may bring a civil action in
6                    admiralty against the person or vessel responsible. The action
                    shall be for the exclusive benefit of the decedent's spouse,
7                    parent, child, or dependent relative.

8    46 U.S.C. § 30302 (2012).  Courts hold that "a cause of action under DOHSA accrues at the

9    time and place where an allegedly wrongful act or omission was consummated in an actual

10   injury." *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1354 (S.D. Fla. 2009).  As the

11   facts undisputedly illustrate, the actual alleged injury occurred in international waters after

12   departing from Half Moon Cay, Bahamas.  Capt. Turner Decl. ¶¶ 5-8 & Exs. A & B thereto;

13   Bergman Decl. ¶ 2.  Even Plaintiff alleges jurisdiction based on DOHSA.  Compl. ¶10.

14          However, Plaintiff's first three causes of action for negligence, negligent hiring and

15   supervision, and medical malpractice also seek damages for the alleged wrongful death of Mr.

16   Eassa.  It is well-settled that where DOHSA applies, it preempts all other forms of wrongful

17   death claims under State or general maritime law.  *Dooley v. Korean Air Lines Co.*, 524 U.S.

18   116 (1998) (holding that DOHSA preempts survival action under general maritime law);

19   *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 227 (1986) ("Under the prevailing

20   uniformity doctrine . . . to the extent Congress provided a federal remedy for wrongful death on

21   the high seas, the federal substantive law would clearly have pre-empted conflicting state

22   wrongful death statutes . . . .").  The Ninth Circuit Court of Appeals and Washington state

23   courts have also held that DOHSA is an exclusive remedy for wrongful death claims.  *Howard*

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  *v. Crystal Cruises*, 41 F.3d 527, 529-30 (9th Cir. Cal. 1994); *Renner v. Rockwell International*

2  *Corp.*, 587 F.2d 1030 (9th Cir. 1978); *Khung Thi Lam v. Global Med. Sys.*, 127 Wn. App. 657,

3  662 (Wash. Ct. App. 2005) ("DOHSA preempts state wrongful death and survival statues and

4  provides the exclusive remedy for deaths on the high seas."); Schoenbaum, § 8–2. ("Where it

5  applies . . . DOHSA is exclusive").  Accordingly, as the present matter involves a death that

6  occurred outside the territorial waters of the United States, DOHSA is applicable and precludes

7  all other causes of action seeking relief for wrongful death.

8      **C. Summary Judgment Should Be Granted Dismissing Plaintiff's Wrongful Death Claim Under DOHSA As There is No Evidence Showing Any Defendant Was Negligent.**

9

10      As discussed above, well-settled law holds that "when the incident takes place outside

11  the three-mile DOHSA and DOHSA alone controls." *Helman*, 843 F. Supp. 2d at 1041

12  (quoting *Bodden v. American Offshore, Inc.*, 681 F.2d 319, 329 (5th Cir. 1982)). "DOHSA

13  provides the exclusive remedy for wrongful deaths that occur on the high seas." *Bowoto v.*

14  *Chevron Corp.*, 621 F.3d 1116, 1122 (9th Cir. 2010).  Liability in a DOHSA suit may be based

15  upon negligence. 46 U.S.C. § 30302; *Gavigan v. Celebrity Cruises Inc.*, 843 F. Supp. 2d

16  1254 (S.D. Fla. 2011) (dismissing DOHSA claim based on three separate theories of

17  negligence including (1) failure to provide medical facility large enough to closely monitor

18  passenger who contracted norovirus, (2) negligent selection and retention of shipboard medical

19  doctors, and (3) apparent agency).  "'To recover for negligence, a plaintiff must establish: (1)

20  duty; (2) breach; (3) causation; and (4) damages.'" *Samuels v. Holland Am. Line-USA*, 656

21  F.3d 948, 953 (9th Cir. Wash. 2011) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061,

22  1070 (9th Cir. 2001)). In this case, Plaintiff cannot proffer sufficient probative evidence to

23

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

meet her burden to establish her husband's death was caused by negligence. Rather, Mr. Eassa died of a heart attack. Cardiologist Dr. Thompson Decl. ¶¶ 2-3.

Under the general maritime law, a ship owner is not the insurer of its passengers' safety. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Rather "[T]he owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising reasonable care under the circumstances of each case." *Samuels,* 656 F.3d at 853 *quoting Kermarec,* 358 U.S. at 632. Moreover, a cruise ship owner is not liable for the negligence of independent contractors over whom the owner has no control. *See* 10 Benedict on Admiralty § 8.04(a) at 8-5 (7th Ed. Rev. 2008); *See Dubret v. Holland Am. Line Westours, Inc.,* 25 F. Supp. 2d 1151, 1153 (W.D. Wash. 1998); *Henderson v. Carnival Corp.*, 125 F. Supp. 2d 1375, 1375 (S.D. Fla. 2000). This is especially so, where as here, HAL disclaimed liability and control over medical procedures aboard ship in the cruise contract. Bergman Decl. ¶¶ 8-9 & Ex. 2 thereto.

### 1. HAL Warned Passengers of Shipboard Illness and Took Appropriate Care.

As noted above, Plaintiff bases her wrongful death cause of action on two separate but related theories: (1) Mr. Eassa had a heart attack due to failing to warn him of a norovirus issue aboard the vessel in 2008 and (2) Mr. Eassa's heart attack was caused by failing to take proper care to minimize the risk of norovirus. Compl. ¶¶ 56-58. As to these contentions, HAL disclosed to passengers information about shipboard illness, including videos from the CDC to reduce chances of illness, and brochures recommending passengers wash their hands and use hand sanitizer. Wright Decl. ¶¶ 3-4 & Ex. 2 thereto. In addition, the events in 2008 or even on other ships is immaterial to the present condition of the vessel given that days before the subject cruise, the Centers for Disease Control and Prevention ("CDC") scored the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 11

NIELSEN SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

ZUIDERDAM a "99 out of 100" during a health inspection. Wright Decl. ¶ 6. & Ex. 4 thereto. Plaintiff has no probative evidence to support her allegations.    Accordingly, summary judgment should be granted dismissing Plaintiff's wrongful death claim under DOHSA as there is no evidence of HAL breaching any duty of care to Mr. Eassa.

### 2. HAL Did Not Cause Mr. Eassa's Death.

In addition to a lack of sufficient evidence establishing any breach by HAL in either warning passengers of norovirus or taking steps to minimize its risk on a ship the CDC itself scored almost perfect on a health inspection, Plaintiff cannot prove Mr. Eassa's heart attack was caused by either of these or any other alleged breach. Mr. Eassa's death was medically more probably than not the result of a cardiac arrest caused by ventricular fibrillation. Cardiologist Dr. Thompson Decl. ¶ 3.    The ultimate cause was a preexisting condition, coronary heart disease—blockage of the arteries to the heart. *Id.* This is usually caused by smoking, high blood pressure or high blood cholesterol alone or in combination. Mr. Eassa had all three of these risk factors. *Id.* ¶¶ 3-4.  Nothing could have been done differently by HAL or anyone else that would have saved Mr. Eassa's life from his sudden cardiac death. *Id.* ¶¶ 9-11.  Plaintiff has not and cannot proffer sufficient evidence showing on a medically more probable than not basis Mr. Eassa's sudden heart attack was caused by any negligence by any HAL crewmember.  Accordingly, summary judgment is proper on this basis as well.

### 3. Plaintiff's Other Theories Do Not Support a DOHSA claim.

In her Complaint, Plaintiff alleges a list of other unfounded charges, including that (1) HAL negligently hired and supervised Defendants Dr. David Murray and Nurse Susan Pereira (Second Claim for Relief) and breached its duty by failing to ensure they maintained a minimal level of safety, and (2) Nurse Pereira failed to provide adequate medical care (Third Cause of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 12

NIELSEN ◆ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

Action for Medical Malpractice). Compl. ¶¶ 37-43 & 44-53. Here the parties agreed in the Passage Contract that "We [HAL] do not undertake to supervise, nor assume any liability in respect of, the acts or omissions of the Ship's physician, Ship's nurse, . . . all of whom are either independent contractors or are employed by independent contractors, and work directly for the passenger when performing their services." Bergman Decl. ¶ 8 & Ex. 2 thereto. Furthermore, HAL disclosed in the Passage Contracts with Plaintiff and her husband that "We do not undertake to supervise the medical expertise of any such personnel and will not be liable for the consequences of any examination, advice, diagnosis, medication, treatment, prognosis, or other professional services which a doctor or nurse may furnish or fail to furnish to you." *Id.* While HAL provides cruises, there are risks inherent to being aboard the Ship, including as the Passage Contract identifies the "lack of access to full medical services." *Id.* ¶ 9 & Ex. 2.

As to the first of Plaintiff's other theories, "[w]hile it is well-settled that a shipowner may be liable for negligently hiring and/or retaining an independent contractor, there exists 'a paucity of well-developed jurisprudence delineating the specific contours and elements' of such a claim. *Gavigan*, 843 F. Supp. 2d at 1262, n.3 (quoting *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 2011 WL 2066768, *8 (S.D. Fla. 2011)). "[I]t must be remembered that shipowners do not 'possess expertise in supervising the doctor in his practice of medicine.'" *Gavigan*, 843 F. Supp. 2d at 1262, n.3 (quoting *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1370 (S.D. Fla. 2005)). "Thus, the allegations related to the shipowner's knowledge must be based on facts that a similarly situated, reasonable person would understand to demonstrate that the doctor was unfit to treat patients." *Gavigan*, 843 F. Supp. 2d at 1262, n.3. As in *Gavigan*, the Complaint in this case similarly lacks any specific facts showing that HAL knew or should have known that either Dr. Murray or Nurse Periera were

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 13

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

unfit to treat patients given the applicable standard of care aboard ship.  Nor can Plaintiff proffer such probative evidence establishing such knowledge as there is no basis that either were negligent in providing care. See Cardiologist Dr. Thompson Decl. ¶¶ 9-11.

As to Plaintiff's alternative theory, that Nurse Periera committed medical malpractice, as noted above, the Passage Contract disclosed that HAL does not supervise or control medical decisions made aboard ship. Bergman Decl. ¶¶ 8 & 9; Ex. 2 thereto.  In addition, there is no support for such allegations.   See Cardiologist Dr. Thompson Decl. ¶¶ 10 & 13-15.  Accordingly, Plaintiff's alleged theories claims for wrongful death fail for these reasons and those above, and as such, summary judgment should be granted.

**D. Plaintiff is Not Entitled to Recover Non-Pecuniary Damages Under DOHSA.**

Fed. R. Civ. P. Rule 56(a) provides that partial summary judgment may also be granted on part of each claim or defense. The Court may also grant other appropriate relief. *See also* Fed. R. Civ. P. 56(f) & (g).  If Plaintiff's claim for wrongful death under DOHSA is not dismissed, then it should be limited to recovery of pecuniary loss.

DOHSA provides that recovery under the Act "shall be a fair compensation *for the pecuniary loss* sustained by the individuals for whose benefits the action is brought.  The court shall apportion the recovery among the individuals in proportion to the loss each has sustained." 46. U.S.C. § 30303 (emphasis added).  Accordingly, it is settled that "DOHSA permits only pecuniary damages." *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 231 (1996); *see also Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624-25 (1978) (nonpecuniary damages are not recoverable under DOHSA); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1350-51 (9th Cir. 1987) (holding that "loss of society is nonpecuniary and therefore no recoverable under DOHSA.") (citing to *Higginbotham*, 436 U.S. at 624-25).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 14

NIELSEN ✣ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   Thus, DOHSA does not permit Plaintiff to recover non-pecuniary damages for claims arising

2   from wrongful death.  Consequently, all claims for non-pecuniary damages, including claims

3   for loss of society and mental pain and suffering should be stricken with prejudice, should

4   summary judgment not be granted dismissing all Plaintiff's claims for wrongful death under

5   DOHSA.[1]

6   **E.  Plaintiff's DOSHA Case Must Be Tried in Admiralty Before the Court.**

7   DOHSA creates an exclusively federal cause of action.  *Bailey v. Carnival Cruise*

8   *Lines, Inc.*, 774 F.2d 1577, 1581 (11th Cir. 1985).  Specifically, the statute provides that "the

9   personal representative of the decedent may bring a civil action *in admiralty*."  46 U.S.C. §

10  30302 (Emphasis added).  The parties in a case "in admiralty" have neither a Constitutional

11  right nor a right under the Federal Rules of Civil Procedure to a trial by jury.  Fed. R. Civ. P.

12  Rule 38(e); *Peace v. Fidalgo Island Packing Co.*, 419 F.2d 371, 371 (9th Cir. 1969).

13  Accordingly, cases that fall under DOHSA are subject to bench trial.  *See* Billy Coe Dyer,

14  *NOTE: The Jury on the Quarterdeck: The Effect of Pleading Admiralty Jurisdiction When a*

15  *Proceeding Turns Hybrid*, 63 TEX. L. REV. 533, 548 (1984) ("Actions under DOHSA are

16  thought to be *exclusively cognizable in admiralty* and thus carry no right to a jury trial.")

17  (emphasis added); *Opinion of Conn. Probate Court: In Re Estate of George Smith, IV*, 22

18

19  _____

[1] *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996) (finding there could be no recovery for
20  loss-of-society damages under DOHSA); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978)
    (holding that because DOHSA bars nonpecuniary damages, DOHSA may not be supplemented with a
    general maritime wrongful death action for nonpecuniary damages, specifically loss of society
21  damages).  Where DOHSA is applicable, federal admiralty law does not recognize claims for loss of
    consortium or loss of society as a general rule.  *In re Amtrak "Sunset Limited" Train Crash*, 121 F.3d
22  1421 (11th Cir. 1997), *Palmieri v. Celebrity Cruise Lines*, 1999 U.S. Dist. Lexis 10531 (S.D.N.Y. July
    12, 1999), *Friedman v. Cunard Line Limited*, 996 F. Supp. 303, 312 (S.D.N.Y. 1998), *Chan v. Society*
23  *Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994) (loss of consortium claims brought by spouse of cruise
    ship passenger); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

**NIELSEN ⊕ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  QUINN. PROB. L.J. 83, 92 (2009) ("DOHSA preempts state law wrongful death statutes and

2  *requires a bench trial . . . .*").

3       As DOHSA provides the exclusive remedy in this matter for the alleged wrongful death

4  of her husband, Plaintiff's claim falls within the admiralty jurisdiction of the Court, and

5  therefore, requires a bench trial. *See Favaloro v. S/S Golden Gate*, 687 F. Supp. 475, 481

6  (N.D. Cal. 1987) ("Ordinarily, there is no right to a jury trial in an action under the court's

7  maritime jurisdiction."); *see also Higa v. Transocean Airlines*, 230 F.2d 780, 782 (9th Cir.

8  1955), *cert denied*, 352 U.S. 802 (1956) ("[The] contention of a right to jury trial was

9  discussed in the House in consideration of the bill which was enacted that day, March 30,

10  1920. The discussion . . . clearly shows that the admiralty jurisdiction is exclusive."). Thus, if

11  summary judgment is not granted dismissing Plaintiff's wrongful death claim, the jury should

12  be stricken.

13      **F.  The Passage Contract Excludes Plaintiff's Emotional Distress Claim.**

14       The parties' Cruise Contract excludes all liability for negligent infliction of emotion

15  distress ("NIED") except if it was intentionally inflicted, the result of actual physical injury, or

16  "the result of you having been at actual risk of physical injury caused by the negligence or fault

17  of a crewmember or the manager, agent master, owner or operator of the Ship."  Bergman

18  Decl. *Id.* ¶ 8 & Ex. 2. There is no dispute that Plaintiff Selma Eassa never received any

19  physical injury.  Plaintiff did not contract any illness from the ship.  Eassa Dep. 35:20-36:1,

20  Oct. 15, 2015, attached as Ex. 1 to Wright Decl.  There is no evidence that she was at actual

21  risk of physical injury after being informed of her husband's condition.  Therefore, Plaintiff's

22  Passage Contract excludes her s claim for negligent infliction of emotional distress.

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 16

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    Such clauses are enforceable.  The Honorable William Dwyer and Marsha Pechman

2    upheld the same provision that is at issue here.  *Cummings et al. v. Holland Am. Line Westours,*

3    *Inc.*, 1999 A.M.C. 2282 (W.D. Wash. 1999) (dismissing family members' claims for negligent

4    infliction of emotional distress where decedent drowned); *Wyler v. Holland Am. Line – USA,*

5    *Inc.*, 2003 A.M.C. 408 (W.D. Wash. 2002) (dismissing husband's claim for emotional injury

6    where wife was thrown out of a chair during a storm).  *See also Silware v. Holland Am. Line*

7    *Westours Inc.*, 1998 A.M.C. 2262 (W.D. Wash. 1998); *Davis v. Wind Song Ltd.*, 809 F. Supp.

8    76 (W.D. Wash. 1992).

9    The parties' cruise contract bars Plaintiff's NEID claim, and her claim must be

10   dismissed with prejudice.  Under the general maritime law, cruise contract provisions are valid

11   and enforceable if the terms: (1) are reasonably communicated to the passenger; and (2) comply

12   with the notions of "fundamental fairness."  *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595

13   (1991); *Spataro v. Kloster Cruise*, 894 F.2d 44, 46 (2d Cir. 1990); *Norwegian Cruise Line, Ltd.*

14   *v. Clark*, 841 So.2d 547 (Fla. 2d D.C.A. 2003).  In determining whether a Passage Contract

15   meets these requirements, the Ninth Circuit adopted the two-prong "reasonable

16   communicativeness test" in *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835-36 (9th Cir.

17   2002). Under this test, contract provisions are valid and enforceable where (1) the contract

18   provision is, on its face, easily read and clear as to meaning; and (2) the passenger had

19   considerable time and opportunity to read the provision prior to the start of the cruise.  *Id.*

20   The Passage Contract here clearly meets both prongs of the *Wallis* two-prong

21   reasonable communicativeness test. With respect to the first prong, the Cruise Contract is both

22   easily read and clear as to meaning.  The Passage Contract clearly directed Plaintiff to the

23   provisions affecting her legal rights.  Ex. 2 to Bergman Decl.; Bergman Decl. at ¶¶ 6-8.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 17

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   Addressing the notice language, U.S. District Court Judge Marsha Pechman found the cruise

2   contract and exclusion regarding negligent infliction of emotional distress met the first prong of

3   the reasonably communicated test, stating:

> 4   Regarding the first prong, the Court finds (as have other courts
> before) the contract limitations to be clearly and prominently stated.
> 5   On the first page of the Cruise and Cruisetour Contract, it states in
> all capital letters "ISSUED SUBJECT TO THE TERMS AND
> 6   CONDITIONS ON THIS PAGE AND THE FOLLOWING
> PAGES.   READ TERMS AND CONDITIONS CAREFULLY."
> 7   The next page states, again in all capital letters, "NOTICE: YOUR
> ATTENTION IS ESPECIALLY DIRECTED TO CLAUSES A.1,
> 8   A.3, A.4, A.5, A.6, A.7, A.9 A.10, AND C.4 BELOW, WHICH
> CONTAIN IMPORTANT LIMITATIONS ON YOUR RIGHT TO
> 9   ASSERT CLAIMS AGAINST US."

10   *Wyler*, 2003 A.M.C. at 410.  The Wyler contract introductory language is almost identical to

11   the contract at issue here.  *Compare* Exh. 2 to Bergman Decl. *with Wyler*, 2003 A.M.C. at 410.

12       The second prong of the "reasonable communicativeness test" requires that Plaintiff has

13   time and opportunity to read the provision of the Passage Contract prior to the start of the

14   cruise.  Here, Plaintiff received and accepted the terms of the Passage Contract on September

15   26, 2013.  Bergman Decl. ¶¶ 4 & 15-16.  This was well before the start of their November

16   2013 cruise.  Therefore, Plaintiff had ample time and opportunity to read the provisions.

17   Under the general maritime law, even where the passenger fails to either read or retain the

18   passenger ticket contract, the contract's provisions are binding and enforceable.  *Carpenter v.*

19   *Klosters Rederi A/S*, 604 F.2d 11, 13 (5th Cir. Fla.); *Miller v. Lykes Bros. Steamships Co.*, 467

20   F.2d 464, 465 (5th Cir. 1972); *Strauss v. Norwegian Caribbean Lines*, 613 F. Supp. 5, 8 (E.D.

21   Pa. 1984).  *See also Geller v. Holland-America Line*, 298 F.2d 618, 619 (2d Cir. N.Y. 1962),

22   *cert. denied*, 370 U.S. 909 (1962) (passengers are bound by the terms of a cruise line ticket

23   contract even if they have never opened the ticket envelope).

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

Additionally, it is fair and reasonable to charge a passenger with legal notice of contractual limitations clearly appearing on the ticket when an individual's travel agent receives the passenger ticket contract. *Muratore v. M/S Scotia Prince*, 1988 A.M.C. 845 (D. Me. 1987). As noted in *Wyler*, "passengers have a contractual duty to apprise themselves of the provisions of a cruise contract." 2003 A.M.C. 408 (citing *Kendall v. American Hawaii Cruises*, 704 F. Supp. 1010, 1016 (D. Haw. 1989)). "The passenger who omits to read takes the risk of the omission." *Kendall*, 704 F. Supp. at 1017, (quoting *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 247 (3d Cir. 1987), *cert. denied*, 484 U.S. 852 (1987) (quoting *Judge Cardoza in Murray v. Cunard S.S. Co., Ltd.*, 139 N.E. 226, 228 (N.Y. 1923))). The relevant inquiry is not whether the passenger read his ticket; but rather, whether the passenger had the opportunity to read the ticket. *Barkin v. Norwegian Caribbean Lines*, 1988 A.M.C. 645, 650 (D. Mass. 1987); *Kendall*, 704 F. Supp. at 1016.

As noted above, the Eassas received their Passage Contract more than a month before embarking on their cruise and indicated to HAL that they had read it and agreed to all the terms and conditions; therefore, both had the time and opportunity and did read the contract's terms. Indeed, consistent with the holding in *Wyler*, Plaintiff had a "contractual duty" to familiarize herself with the contract's provisions. *See also Wallis*, 305 F.3d at 836; *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir. 1995). Whether Plaintiff failed to read the contract, or simply ignored its terms, is irrelevant – the terms apply in the present matter.

Consistent with HAL's request in this matter, courts have enforced the terms within its cruise contracts numerous times. *Caputo v. Holland America Line, Inc.*, 2009 U.S. Dist. LEXIS 65418 (E.D.N.Y. July 29, 2009); *Bereola v. Holland America Line, Inc.*, 2008 U.S. Dist. Lexis 6464 (N.D. Cal. 2008); *Schlessinger v. Holland America, N.V.*, 120 Cal. App. 4th

552 (Cal. Ct. App. 2004); *Tady v. Holland America Line-Westours, Inc.*, 1998 A.M.C. 2922 (Cal. App. 4th 1997); *Williams v. Holland America Cruises*, 1981 A.M.C. 492 (E.D. Mich. 1981); *Carron v. Holland America Line-Westours Inc..*, 51 F. Supp. 2d 322 (E.D. N.Y. 1999); *Wyler v. Holland America Line-USA, Inc.*, 2003 A.M.C. 408, 410 (W.D. Wash. 2002) (citing *Cummings v. Holland America Line Westours, Inc.*, 1999 A.M.C. 2282 (W.D. Wash. 1999); *Silware v. Holland America Line Westours, Inc.*, 1998 A.M.C. 2262 (W.D. Wash. 1998); *Davis v. Wind Song Ltd.*, 809 F. Supp. 76 (W.D. Wash. 1992)).   Therefore, Defendants respectfully request that the Court enforce the Passage Contract provision limiting liability for Plaintiff Selma Eassa's NIED claim.   In so doing, Defendants also request that the Court dismiss the NEID claim as a matter of law as Plaintiff cannot prove she was at actual risk of physical injury caused by the negligence or fault of a crewmember.

### G. Plaintiff Selma Eassa Cannot Prove A Physical Injury which Constitutes Emotional Distress as a Matter of Law.

Even if the NIED claim is not contractually barred, Plaintiff has failed to state an injury that constitutes emotional distress as a matter of law.   There are a variety of limiting tests for assessing claims of negligent infliction of emotional distress. The three predominant limiting tests are (1) the physical impact test, (2) the zone of danger test, and (3) the relative bystander test. *See Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 546-49 (1994). While Plaintiff's allegations may satisfy the relative bystander test, admiralty law allows recovery only for those passing the zone of danger test. *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1353-54 (S.D. Fla. 2008); *Stacy v. Danielsen*, 609 F.3d 1033, (9th Cir. Cal. 2010), *cert. denied*, 562 U.S. 1219 (2011). "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 20

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

immediate risk of physical harm by that conduct." *Smith*, 584 F. Supp at 1354 (quoting *Gottshall*, 512 U.S. at 547-48). In other words, "those within the zone of danger can recover for fright, and those outside of it cannot." *Id.* (quoting *Gottshall* at 548.). In this case, however, there was no immediate risk of physical harm to Mrs. Eassa. She has made no such allegation in her Complaint nor can she proffer any evidence supporting this requirement.

General maritime law also requires an "objective manifestation" of the emotional injury – a physical injury or effect which arises from the emotional injury. *See, e.g., Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-478 (5th Cir. 2001); *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995). "Objective manifestation" is defined as a physical manifestation of an emotional injury. *Williams*, 907 F. Supp. 403 (fear and seasickness lasting a few days insufficient); *see also Ellenwood v. Exxon Shipping*, 795 F. Supp. 31, 35 (D. Me. 1992) (loss of sleep and loss of appetite insufficient). Plaintiff testified she did not become physically ill. Eassa Dep. 35:20-36:1, Oct. 15, 2015, attached as Ex. 1 to Wright Decl. Nowhere in the Complaint does Plaintiff allege such objective manifestation, thus she cannot prevail on her NIED claim without it. Accordingly, summary judgment is proper to dismiss Plaintiff's Fifth Claim for emotional distress.

## VII.   CONCLUSION

DOHSA governs Plaintiff's claims for alleged wrongful death because Mr. Eassa's death occurred while the ZUIDERDAM sailed on the high seas outside 3 nautical miles of the U.S. Plaintiff, however, cannot prove HAL was negligent to establish a DOHSA claim. Consequently, Plaintiff's wrongful death claims should be dismissed in their entirety, and if they are not, the recovery is limited to pecuniary loss to be determined by the Court, and not a jury trial. Also, the NIED exclusion clause contained in the reasonably communicated and

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   fundamentally fair Passage Contract prevents Plaintiff from pursuing a claim for emotional

2   damages.   Furthermore, absent proof of immediate risk of harm and objective manifestation,

3   Plaintiff's claim for emotional distress also fails as a matter of law.

4          For these and foregoing reasons discussed above, Defendants respectfully request the

5   Court grant summary judgment and dismiss Plaintiff's claims.

6          Respectfully submitted,

7          DATED this 31st day of December, 2015.

8                                              s/Louis A. Shields
9                                              LOUIS A. SHIELDS, WSBA # 25740
                                               NIELSEN SHIELDS, PLLC
10                                             1000 Second Avenue, Suite 1950
                                               Seattle, Washington 98104
11                                             Telephone:    206-728-1300
                                               Facsimile:    206-728-1302
12                                             Email:        las@nielsenshields.com
                                               Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 22

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

   I hereby certify that on December 31, 2015, I electronically

4
filed the foregoing with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the following:

5

   Charles P. Moure, Esq.

Harris & Moure PLLC

6
   600 Stewart Street, Suite 1200

Seattle, WA  98101

7

   I certify under penalty of perjury under the laws of the State of

8
Washington that the foregoing is true and correct.

9

   Signed at Seattle, Washington.

10

      *Sheila Baskins*

11
      Legal Assistant

      1000 Second Avenue, Suite 1950

      Seattle, Washington 98104

12
      Telephone:  206-728-1300

      Facsimile:  206-728-1302

      smb@nielsenshields.com

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 14-01639 – Page 23

**NIELSEN✦SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104